[Crim. No. 8887. Third Dist. Jan. 3, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHNNIE LEE ALLEN, Defendant and Appellant.

COUNSEL

Paul Halvonik, State Public Defender, under appointment by the Court of Appeal, Gary S. Goodpastor, Chief Assistant State Public Defender, David M. Blackman, Laurance S. Smith, Quin Denvin and Richard E. Shapiro, Deputy State Public Defenders, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Charles P. Just and Nelson P. Kempsky, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**PARAS, J.**—Defendant appeals from a judgment entered after a jury convicted him of assault with a deadly weapon (Pen. Code, § 245), with use of a firearm. (Pen. Code, § 12022.5.)

Since defendant does not challenge the sufficiency of the evidence, it is unnecessary for us to state the facts in detail. It was undisputed that as the victim Steven Mitchell was walking away after a confrontation, defendant shot him in the buttocks. Defendant's claim that Mitchell had a weapon, and that he acted in self-defense, was rejected by the jury.

On appeal, defendant makes several arguments:

1. The abstract of judgment must be modified by striking the punishment imposed pursuant to Penal Code section 12022.5, since the court failed to give jury instructions covering that section.

2. The statement in the abstract of judgment that defendant used a firearm within the meaning of section 12022.5 must be stricken because the trial court failed to pronounce judgment and sentence on this charge.

3. The trial court erred when it failed to instruct the jury *sua sponte* that the prosecution was required to demonstrate beyond a reasonable doubt the absence of any self-defense justification.

4. The trial court erred in admitting incriminating statements made by defendant during an interview at which he was not advised of his rights under *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

I

■ Defendant contends that the jury was not given a sufficient instruction on use of a firearm in the commission of the crime. (Pen. Code, § 12022.5.) We disagree. As part of its instructions to the jury, the court stated that it was charged against defendant: "That during the commission of the above offense, said defendant used a firearm, to wit, an unknown caliber automatic pistol, in violation of section 12022.5 of the Penal Code of the State of California." The jury was given verdict forms which gave it the alternative of finding that defendant did or did not use a firearm during the commission of the offense; it found that he did.

Defendant argues that the court should have given CALJIC No. 17.19, because such an instruction "was essential to define the statutory term 'uses a firearm.'" (*People* v. *Najera* (1972) 8 Cal.3d 504, 510, fn. 5 [105 Cal.Rptr. 345, 503 P.2d 1353].) This argument has no validity. On the undisputed facts of the case, there was never any question that defendant used a firearm. There was nothing as to which CALJIC No. 17.19 would have been helpful. That instruction simply states that "The word 'firearm' includes a pistol . . ." and that "The term 'used a firearm' includes . . . an intentional discharge thereof . . . ." Defendant does not and cannot argue on this record that the pistol was not a firearm or that

he did not discharge it intentionally. Any conceivable error on this issue was absolutely harmless.[1]

## II

■ Despite the trial judge's oral recitation at the time of sentencing, that the defendant "was found by the jury to have used a firearm, a pistol, in violation of section 12022.5," defendant insists that the judge's failure to repeat the phrase a moment later in his actual sentence must be viewed as an exercise of judicial leniency, or if inadvertent, as an error of jurisdictional significance which cannot now be corrected (citing *In re Candelario* (1970) 3 Cal.3d 702, 705-706 [91 Cal.Rptr. 497, 477 P.2d 729], and its progeny).

This contention must be rejected. The recent Supreme Court decision in *People v. Hunt* (1977) 19 Cal.3d 888, 897 [140 Cal.Rptr. 651, 568 P.2d 376], holds that *Candelario* does not apply to "use" findings under Penal Code section 12022.5 because such findings can only be stricken by an order accompanied by a statement of reasons "set forth in an order upon the minutes," as required by Penal Code section 1385. As stated in *Hunt*: "It is manifest that because even an *express* order of dismissal pursuant to section 1385 is ineffective in the absence of a statement of reasons, a use finding cannot be dismissed or struck sub silentio, as defendant claims in this case. There was not, of course, a statement of reasons in support of defendant's claimed striking." *(Ibid.)*

## III

■ Defendant argues that the court erred in failing to instruct *sua sponte* that the prosecution was required to prove the absence of self-defense beyond a reasonable doubt. The argument is premised upon the contention that this court's opinion in *People v. Sandoval* (1970) 9 Cal.App.3d 885, 887 [88 Cal.Rptr. 625], is no longer good law after the United States Supreme Court's decision in *Mullaney v. Wilbur* (1975) 421 U.S. 684 [44 L.Ed.2d 508, 95 S.Ct. 1881].

In *Sandoval*, as in the present case, the trial court gave the standard instruction on reasonable doubt and a group of instructions, requested by defendant, on the elements of self-defense. But in *Sandoval*, as here, defense counsel did not request a specific instruction combining self-defense and reasonable doubt, such as the one approved in *People v. Sanchez* (1947) 30 Cal.2d 560, 571 [184 P.2d 673].

---

[1]Defendant has called our attention to *People v. Haney* (1977) 75 Cal.App.3d 308 [142 Cal.Rptr. 186]. We find that case in no way persuasive.

Relying on the general rule that a trial court must instruct the jury *sua sponte* on " 'those principles of law commonly or closely and openly connected with the facts of the case . . . ,' but need not instruct on *specific* points developed at the trial unless requested," (italics added) the *Sandoval* court held that "[t]he *Sanchez* instruction is a specific point . . .", and hence need not be given *sua sponte.* (9 Cal.App.3d at p. 888.) The *Sandoval* court added that "When, as here, the defendant requests a group of instructions describing a particular theory of defense, he impliedly represents that the request fulfills his need. He would trap the trial court into error were he permitted to expand the request at the appellate stage. Here the judge fulfilled his *sua sponte* obligations when he instructed the jury on the general principles of reasonable doubt and self-defense. Defendant's failure to request the amplifying *Sanchez* instruction bars his claim of error on appeal. (*People* v. *Wren* (1969) 271 Cal.App.2d 788, 793 [76 Cal.Rptr. 673].)" (9 Cal.App.3d at p. 888.)

In *Mullaney* v. *Wilbur, supra,* 421 U.S. 684, the United States Supreme Court held that the State of Maine's requirement that a defendant charged with murder prove that he acted "in the heat of passion on sudden provocation" in order to reduce the homicide to manslaughter, violated the due process requirement (as defined in *In re Winship* (1970) 397 U.S. 358 [25 L.Ed.2d 368, 90 S.Ct. 1068]), that the prosecution prove beyond a reasonable doubt every fact necessary to constitute the crime charged. Defendant argues that *Mullaney* has elevated to constitutional status the requirement that the prosecution must prove the absence of any justification beyond a reasonable doubt and that therefore "the assumption in *Sandoval* that [this] . . . principle is merely a specific application of the [reasonable doubt] . . . rule is no longer tenable."

Defendant's argument ignores the fact that the *Mullaney* rule (albeit not expressed in constitutional terms) was settled law in California at the time of the *Sandoval* decision, and had been for decades earlier. (See cases and statutes collected in *People* v. *Tewksbury* (1976) 15 Cal.3d 953, 963-964 [127 Cal.Rptr. 135, 544 P.2d 1335].) *Mullaney's* overt recognition of the constitutional underpinnings of the California rule does not require a *Sanchez* instruction *sua sponte* where that instruction is simply particularization of other given instructions.

Accordingly, we reaffirm the holding in *Sandoval* that an instruction that the prosecution must disprove self-defense beyond a reasonable doubt, need not be given *sua sponte.*

## IV

■ Defendant's final contention is that the trial court erred in admitting a tape-recorded statement given by him to police officers. The statement was made a little over two weeks after the crime, which was committed on December 29, 1975, in an unincorporated part of metropolitan Sacramento. It was thus investigated by the county sheriff's office, not the Sacramento Police Department. Although the record is not totally clear, it indicates that defendant was not arrested for the crime until sometime after January 15, 1976. In the meantime, the Sacramento City Police Department was investigating the murder of a man named Drayton who had been shot and killed near defendant's residence on January 10, 1976. On January 14, a person who knew defendant told police that the killing might have been a case of mistaken identity, with defendant the real target. Defendant was at that time in the county jail on a traffic warrant, and an officer spoke to him there about the desire of City Police Officer Pane to have defendant call him as soon as possible, preferably at 7 a.m. the next morning.

Defendant was released from jail about midnight, and went to a motel. He overslept and did not call Pane. Pane telephoned him about 8 or 8:30 a.m. He explained that defendant might be the real target of the Drayton homicide; defendant responded that he knew about it and that Pane could come to get him so they could discuss it. Pane drove to the motel (the defendant was staying there under an assumed name, to protect himself). They stopped on the return trip to pick up Danny Woods, a friend of defendant who was thought possibly to be helpful in identifying persons who might be inclined to harm defendant. Defendant was clearly concerned about being the possible target of a homicide, and wanted to talk about it.

At the station, defendant and Woods were immediately taken by Pane to the polygraph room and were joined there by Detective Sergeant Bryers. Defendant was not given *Miranda* rights. A tape recorder was on the desk, in plain view at all times, and was used to record the interview. Bryers explained the situation to defendant, and defendant said that he could give information as to possible suspects. He told stories and gave names of persons with whom he had had problems in the past. At one point, after telling about conflicts with a party or parties named Newton, defendant paused and said something like, "[N]ow I'm going to get to the good part, . . . do you know about the brother—that was shot at

Shiloh Arms?" Bryers responded affirmatively,[2] and defendant then made the controversial statement regarding the Mitchell shooting.

In essence, the statement is as follows: Mitchell confronted defendant and defendant sought to terminate the discussion and walk away. As he turned his back, Mitchell knocked him to the ground. Defendant then said "man, if you want to fight, that's what we will do." He began removing his .38 caliber pistol out of his coat pocket and the victim made a gesture. (Sergeant Bryers testified that when defendant was talking about reaching for the pistol, he indicated the victim made a gesture with his hand toward his own waistband.) Defendant then stated, "And I looked at him and I said, hey. And he said, no, man. I said, no. I said, it would have been me, you know. So like I didn't want no murder case, you know. So he said, well, I might get assault or attempted murder. So I shot him twice. Twice. Side, his hip, you know. Keeps telling me, respect? And I told him let me show you what a little bit of respect is. I shot him."

Significantly, defendant's statement did not mention that he actually saw a gun in the victim's hand; in general it was damaging to his self-defense theory. The discussion of the crime was brief, with very few questions or comments by the officers.

At the end of the meeting, about 4:30 p.m., defendant was returned home by Pane.

The police officers testified that at the time of the statement defendant was not under investigation for any crime; their sole motive was to help him regarding the danger that he might be an intended murder victim and also to gain leads regarding the slayer of Drayton.

Defendant testified ambiguously about his own perceptions of the situation. He confirmed that he talked with the police because of his fear of being an intended target and the possible danger both to him and to his common law wife and her children. He testified that he did not really know whether he was free to walk out of the station, because "if you try to walk out the door, you are going to get stopped." However, he noted

---

[2]Despite this answer, Bryers and Pane both testified that they knew nothing of the Shiloh Arms incident prior to the interview. Defendant testified that during an earlier break, when the tape was not operating, the Shiloh Arms incident was mentioned (presumably by him) and this probably accounts for this temporizing affirmative response.

that he and Woods were given freedom inside the station, and that the officers gave them a couple of dollars to buy lunch and left them unattended in the hallway while the officers went to lunch. He further testified that he wasn't going to go anywhere because Pane had said he would take them back home when they were finished. He stated that he didn't think he was in any kind of trouble with the police, and didn't think he was under arrest for anything or in any unlawful detention.

Defendant argues that the trial court erroneously concluded from this testimony that his statements were not the result of a custodial interrogation, and thus did not require that he be advised of his *Miranda* rights. Based upon *People* v. *Arnold* (1967) 66 Cal.2d 438, 445, 448 [58 Cal.Rptr. 115, 426 P.2d 515], he contends that he had a "subjective belief that he was not free to leave the questioning at any time he pleased." The record does not support this contention. At the very least, the trial court's implied rejection of it is supported by substantial evidence. (See *People* v. *Duck Wong* (1976) 18 Cal.3d 178, 187 [133 Cal.Rptr. 511, 555 P.2d 297]; *People* v. *Barrow* (1976) 60 Cal.App.3d 984, 990-991 [131 Cal.Rptr. 913].)

Similarly, the trial court's implied determination that the police officers had no prior knowledge of the Mitchell crime, and therefore had not focused upon defendant as a suspect, is supported by substantial evidence, the testimony of the officers themselves (see *Duck Wong, supra*) and that of the defendant.[3] Further support is found in the fact that the Shiloh Arms incident occurred in the jurisdiction of the sheriff rather than the city police and so not within the direct knowledge of Pane and Bryers, and also by defendant's opening words "now I'm going to get to the good part," with which he preceded his discussion of the shooting.

Defendant's claim he was "clearly in custody after his discussion of the Shiloh Arms incident when there was reasonable cause for his arrest" is pointless. First, since he had already made the incriminating statements, no suppression would be in order. Secondly, since he was not in fact arrested after the interview, there is every reason to believe that the officers did not feel that there were grounds for arrest. Certainly they were entitled to believe, since defendant was volunteering the information, that he had in truth acted in self-defense. Indeed, their failure to

---

[3]Defendant expressly stated in his testimony that the officers had no prior knowledge of the Shiloh Arms incident.

attempt to clarify defendant's rather ambiguous statement on this issue is a further indication that they were focusing not upon defendant but upon others who might attempt to kill defendant.

No *Miranda* warning was required, and defendant's statement was properly admitted.

The judgment is affirmed.

Friedman, Acting P. J., and Reynoso, J., concurred.

A petition for a rehearing was denied January 23, 1978, and appellant's petition for a hearing by the Supreme Court was denied March 2, 1978.