Opinion
DODDS, J.
Appellant was convicted by jury of misdemeanor battery (Pen. Code, § 242) and with brandishing a firearm (Pen. Code, § 417, subd. (a)). In a separate court trial, he was convicted of having a revolver in his possession after having been previously convicted of a felony (Pen. Code, § 12021, subd. (a), charged as a misdemeanor). He appeals from the order granting probation.
Facts
In 1943, when appellant was 20 years of age, he pleaded guilty to second degree burglary, a felony, before a Nevada court. He was sentenced to state prison.
*Supp. 18 After he was released, the Nevada Board of Pardon and Parole Commissioners issued a document restoring his civil rights. The document provides in pertinent part: “Now, therefore, it is ordered, that all civil disabilities resulting by the law of the State of Nevada from said conviction of a felony be and they hereby are removed.”
In early 1976, appellant was a bartender at the Grapevine Bar, which is located in Carpintería, California. The liquor license for the bar had been issued to appellant’s wife.
On January 18, 1976, Mr. Tellinghast, Mr. Feldman,' and David Norton[1] went to the Grapevine Bar to play a league game of darts against the Grapevine team. During the course of the evening, the three visitors and appellant were drinking. After appellant boasted concerning his ability to play darts, Mr. Tellinghast offered to play appellant for money.
Appellant became quite angry and went to the cash register and retrieved a revolver. According to the victims, appellant pointed the revolver at Mr. Tellinghast’s abdomen, saying, “I’m going to blow you away, you cocksucker.” Appellant was shaking the gun as he spoke. Mr. Tellinghast raised his hands and tried to calm appellant. Finally, appellant’s wife persuaded appellant to put the gun away and Mr. Tellinghast and Mr. Feldman left the bar.
David Norton testified that he remained behind to retrieve certain expensive darts. Appellant then pushed him and told him to leave the bar. David Norton dropped the darts, and, as he bent over to pick them up, appellant struck him with a roundhouse punch to his head. After appellant struck him a second time, David Norton managed to get out of the bar.
The investigating officer arrived a few 'minutes later and asked appellant about the incident. Appellant admitted striking a patron but denied pulling any weapon. Appellant did, however, turn over a loaded .357 magnum revolver with a two-inch barrel to the investigating officer. No mention was made of any other weapon at that time.
Appellant testified that he owned a replica of a .38 revolver which also had a two (2) inch barrel. Its barrel was welded shut and the weapon was inoperable. This “toy,” called a “non gun,” was filled with lead.
Appellant admitted threatening Tellinghast by saying “I’m going to blow you away.” He stated that he retrieved the non-gun and held it at his side to bluff the visitors. Although he admitted striking David Norton *Supp. 19 once, he felt that he was acting in self-defense since David Norton had darts in his hands.
Issues
The battery conviction is supported by substantial evidence and must be affirmed, however, appellant has raised the following issues which merit greater consideration.
1. May a person previously convicted of a felony in Nevada own or possess a concealable firearm in California after he was issued a Nevada certificate removing all civil disabilities under Nevada law arising from the felony conviction?
2. Did the trial court properly reject appellant’s mistake of fact defense?
3. Must the conviction for violating Penal Code section 12021, subdivision (a), be reversed for a limited new trial on the issue as to whether the Nevada conviction was valid?
4. When a person is charged with violating Penal Code section 417, subdivision (a), must the trial court give instructions defining the terms “firearm” and “deadly weapon?”
Discussion
1. The Nevada Certificate Did Not Allow Appellant To Possess A Concealable Weapon In California.
Our Supreme Court has held that a pardon does not obliterate the record of conviction. Therefore, if defendant commits a new offense, the prior conviction could be considered in determining whether he was a habitual criminal. (People v. Biggs (1937) 9 Cal.2d 508 [71 P.2d 214, 116 A.L.R. 205]; see also Carlesi v. New York (1914) 233 U.S. 51 [58 L.Ed. 843, 34 S.Ct. 576] [presidential pardon].) This is the view taken by a majority of jurisdictions. (See Annot., Pardon as Affecting Consideration of Earlier Conviction in Applying Habitual Criminal Statute (1953) 31 A.L.R.2d 1186.)
There is a conflict whether a pardoned offense may be used for other purposes. In People v. Dutton (1937) 9 Cal.2d 505 [71 P.2d 218], app. dism., 302 U.S. 656 [82 L.Ed. 508, 58 S.Ct. 365], our Supreme Court held that a person convicted of forgery who was previously convicted of the same offense could be treated as a repeat offender even though he was *Supp. 20 given a pardon for the prior offense. The court reasoned that “full faith and credit is not involved.” (Id., at p. 506.)
In People v. Terry (1964) 61 Cal.2d 137, 147-148 [37 Cal.Rptr. 605, 390 P.2d 381], cert, den., 397 U.S. 866 [13 L.Ed.2d 68, 85 S.Ct. 132], our Supreme Court held that it was error to admit proof that defendant had suffered a prior Oklahoma felony conviction where he had received a pardon for the prior offense by Oklahoma authorities. Our Supreme Court, without mentioning either Biggs or Dutton, reasoned that California was required to give full faith and credit to an Oklahoma full pardon (Id, at p. 148).[2]
In 1973, the Attorney General issued an opinion wherein he concluded that a person convicted of a felony by a sister state who received a gubernatorial pardon from that state was still prohibited from possessing a concealable firearm in California. (56 Ops.Cal.Atty.Gen. 138 (1973).) Relying on Biggs and certain federal cases, the Attorney General concluded that California was not required to recognize sister state pardons. However, no mention was made of the Terry decision.
In view of Terry, we are required to consider whether the certificate issued to appellant affords him immunity from prosecution under Penal Code section 12021, subdivision (a). However, we observe at the outset that while the full faith and credit clause is designed to give maximum recognition to rights credited or recognized under the laws of sister states, it does not compel the forum state to subordinate its own laws and policies to conflicting laws or public acts of a sister state. Instead, courts must appraise the governmental interests of each of the states. (See Alaska Packers Assn. v. Industrial Accident Com’n. (1935) 294 U.S. 532, 546-548 [79 L.Ed. 1044, 1051-1052, 55 S.Ct. 518]; Hughes v. Fetter (195) 341 U.S. 609, 611-612 [95 L.Ed. 1212, 1215-1216, 71 S.Ct. 980].) Thus, if we have a “true” conflict between the laws of California and Nevada, and both states had an interest in having their laws applied, we would then be forced to inquire whether California’s public policy would be “very significantly impaired” if an exemption created by Nevada law was recognized. (See Bernhard v. Harrah’s Club (1956) 16 *Supp. 21 Cal.3d 313 [128 Cal.Rptr. 215, 546 P.2d 719], cert, den., 429 U.S. 859 [50 L.Ed.2d 136, 97 S.Ct. 159].)[3]
In order to determine whether the full faith and credit clause is involved, we must first determine whether there is an actual conflict between California law and Nevada law.[4]
Under California law, a person who has been convicted of a felony under the laws of the United States, or the State of California, or of any other state, government, or country who owns or has in his possession or under his custody and control any pistol, revolver, or other firearm capable of being concealed upon his person is guilty of a crime (Pen. Code, § 12021, subd. (a)).
In order to gain a conviction, the prosecutor must prove (1) a conviction of a felony, and (2) ownership, possession, custody or control of a firearm capable of being concealed on the person. (People v. Bray (1975) 52 Cal.App.3d 494, 497 [124 Cal.Rptr. 913].) The definition of a concealable firearm is quite broad. (See Pen. Code, § 12001; People v. Thompson (1977) 72 Cal.App.3d 1; [139 Cal.Rptr. 800].)
Although a person deemed convicted of a misdemeanor is exempt (see Pen. Code, § 17, subd. (b)), a person convicted of an offense punishable as a felony, may not possess a concealable weapon until the offense is declared to be a misdemeanor. (See People v. Banks (1959) 53 Cal.2d 370, 381-384 [1 Cal.Rptr. 669, 348 P.2d 102]; People v. Livingston (1970) 4 Cal.App.3d 251, 254-255 [84 Cal.Rptr. 237]; People v. Holzer (1972) 25 Cal.App.3d 456, 460 [102 Cal.Rptr. 11].) Likewise, since 1961, dismissal of a case pursuant to Penal Code section 1203.4 does not permit a defendant to own a concealable weapon. (Pen. Code, § 1203.4, subd. (a).)
The only knowledge required by the statute is knowledge of the character of the object possessed. Evidence that defendant was unaware of the legal prohibition is altogether irrelevant. (People v. Mendoza (1976) 251 Cal.App.2d 835, 843 [60 Cal.Rptr. 5], People v. Bray, supra, 52 *Supp. 22 Cal.App.3d 494, 498; People v. Howard (1976) 63 Cal.App.3d 249, 256-257 [133 Cal.Rptr. 689].)
When reasonable men would have difficulty in ascertaining whether a prior out-of-state conviction is a felony or misdemeanor, a mistake of fact instruction is required (People v. Bray, supra, 52 Cal.App.3d 494). However, where defendant admitted his felony conviction, no mistake of fact could be claimed (People v. Howard, supra, 63 Cal.App.3d 249, 257).
Penal Code section 12021, subdivision (a), clearly applies to those who were convicted of a felony in California or elsewhere. The Legislature has not provided avenues for relief for ex-felons convicted in federal courts or in other state courts (56 Ops.Cal.Atty.Gen. 138, 139 (1973)).
When the Governor grants a pardon, he may provide that the person pardoned may own or possess any type of firearm which may be lawfully owned or possessed by other citizens (Pen. Code, § 4854). When the Governor grants a full and unconditional pardon, the recipient is restored to all civil and political rights and may own and possess any type of firearm which may be lawfully possessed by other citizens (Pen. Code, § 4852.17). However, persons who were convicted of a felony involving the use of a deadly weapon, may not be given the right to possess concealable firearms and are subject to prosecution if they do so (Pen. Code, §§4852.17 and 4854).
Obviously, since appellant is not exempted from the plain terms of the statute, we turn to consider whether the Nevada certificate gave appellant the right to possess a concealable firearm.
Under Nevada law, a pardon may or may not include restoration to citizenship. When it is granted upon conditions, limitations or restrictions, the instrument must so state. When the certificate does not restore full citizenship, a rehabilitated offender may apply for a restoration of these rights, and if the applicant meets the statutory requirements, the board shall restore the person to citizenship and release such person from all penalties and disabilities resulting from the offense or crime (Nev. Rev. Stats., § 213.090 (1975)).
This section does not purport to specifically restore the right to possess concealable firearms. Hence, it differs from California law. Section 202.360, subdivision (2)(1975) of the Nevada Revised Statutes provides that no person convicted of a felony shall own or have in his possession or *Supp. 23 under his custody or control any pistol, revolver, or other firearm capable of being concealed upon the person. This section does not exempt persons who received a pardon.
In 1967, the Attorney General of California was asked whether a person who received a document containing the same provision as the one issued to appellant could possess a concealable firearm in California. The Attorney General reasoned that while the Nevada State Board of Pardons had authority to issue a full pardon, they, instead, elected to issue a conditional pardon restoring only the civil disabilities resulting from the law of Nevada. Therefore, the individual did not have the right to own a concealable firearm in California. In reaching that conclusion, the Attorney General indicated that the same conclusion had been reached by the Attorney General of Nevada. (See 50 Ops.Cal.Atty.Gen. 6, 8 (1967).)
In Kellogg v. State (Okla. Crim. 1972) 504 P.2d 440, defendant, who had previously been convicted of robbery in Nevada, was charged with carrying a weapon after having been previously convicted of a felony. Defendant claimed that he was not subject to prosecution because he had been issued a certificate of pardon in Nevada which restored all rights of citizenship.
The Oklahoma court affirmed the conviction. It held that the pardon did not restore his right to carry firearms. It reasoned that dicta in State of Nevada v. Foley (1880) 15 Nev. 64, 69 merely addressed the question as to whether an ex-felon could give testimony.
We agree that State of Nevada v. Foley has no bearing on the issue presented in this case. Although we have been referred to no other Nevada case bearing on the question before us, after considering the text of the Nevada statutes, the opinions of the Attorney Generals of California and Nevada, as well as the Oklahoma decision, we are compelled to conclude that appellant received a limited pardon and was not entitled to possess a concealable weapon in California. Therefore, the doctrine of full faith and credit does not afford appellant any defense.
We feel constrained to add that this is a narrow decision. We are not confronted with a case where a pardon was issued following a determination that defendant was innocent of the prior conviction. Nor are we confronted with a situation where the sister state pardon expressly restored a defendant’s right to possess a concealable weapon. We hold *Supp. 24 that the Nevada certificate did not provide appellant with a valid defense to the 12021, subdivision (a) charge.
2. The Mistake Of Fact Or Law Defense Was Properly Rejected By The Trier Of Fact.
The Penal Code section 12021, subdivision (a), charge was submitted for determination by the trial judge based on a stipulated set of facts, including the assertion that appellant relied on the certificate.
Relying on various authorities, such as People v. Ferguson (1933) 134 Cal.App. 41, 51-53 [24 P.2d 965] and People v. Bray, supra, 52 Cal.App.3d 494, appellant insists that he was entitled to an acquittal. We disagree. Those cases merely stand for the proposition that mistaken reliance is a defense to be considered by the trier of fact in appropriate cases. (See also People v. Hernandez (1964) 61 Cal.2d 529, 536 [39 Cal.Rptr. 361, 393 P.2d 673, 8 A.L.R.3d 1092].)
In this case, after reading the certificate, the trial judge could have properly concluded that appellant’s reliance was unjustified. Therefore, the substantial evidence rule requires us to reject appellant’s contention. We hasten to add that we express no opinion as to the approach taken in People v. Bray, supra, 52 Cal.App.3d 494, as applicable to a situation where the certificate of pardon does not expressly restore the right to own a pistol. (Compare United States v. Castellana (M.D.Fla. 1977) 433 F.Supp. 1309, 1316 (applying federal law).)
3. The 12021, Subdivision (a), Conviction Must Be Reversed And Remanded To Determine If The Underlying Conviction Was Secured In Violation Of Appellant’s Right To Counsel.
Where a prior conviction in another state is the essential element underlying a prosecution for violating Penal Code section 12021, subdivision (a), when the validity of such a conviction is challenged, the People must prove that defendant was represented by counsel or that he waived that right. (People v. McGinnis (1967) 249 Cal.App.2d 613, 618 [57 Cal.Rptr. 661].) (See People v. Coffey (1967) 67 Cal.2d 204, 214-218 [60 Cal.Rptr. 457, 430 P.2d 15].) Appellant contended that the 1943 conviction resulted after he pled guilty without advice of counsel. Apparently, the trial court did not pass on this contention. Since a prima facie showing has been made, we will remand the matter for a limited new trial as to whether appellant suffered deprivation of his right to counsel. (See *Supp. 25 People v. Ebner (1966) 64 Cal.2d 297, 305 [49 Cal.Rptr. 690, 411 P.2d 578].)
4. The Trial Court Erred In Failing To Instruct On The Definition Of The Term, “Firearm.”
Every person who, except in self defense, in the presence of any other person, draws or exhibits any firearm, whether loaded or unloaded, or any other deadly weapon whatsoever, in a rude, angry or threatening manner, or who, in any manner, unlawfully uses the same in any fight or quarrel is guilty of a misdemeanor. (Pen. Code, § 417, subd. (a).) (Italics added.)
The statute defines a particular act as a crime. It does not require an intent to do a further act or to achieve a further consequence. Therefore, Penal Code section 417, subdivision (a), is a general intent crime (People v. Hood (1969) 1 Cal.3d 444, 456-457 [82 Cal.Rptr. 618, 462 P.2d 370]).
The People correctly concede that the definition found in Penal Code section 12001 is limited to the chapter dealing with the control of deadly weapons beginning with Penal Code section 12000. Indeed, before the 1969 amendment to Penal Code section 12001, a Court of Appeal concluded that the ex-felon must possess the means to render the weapon operable, and that the purpose of that statute was “to make it unlawful for ex-convicts to cany a gun that will shoot and not merely objects that look like usable guns” (People v. Jackson (1968) 266 Cal.App.2d 341, 347 [72 Cal.Rptr. 162]). Although Penal Code section 12001 was amended (see People v. Thompson, supra, 72 Cal.App.3d 1), no comparable amendment was made to Penal Code section 417, subdivision (a). Therefore, we believe that the Legislature evidenced a different intent insofar as Penal Code section 417, subdivision (a), is concerned (see People v. Norwood (1972) 26 Cal.App.3d 148, 156; [103 Cal.Rptr. 7]).
We will therefore give significance to the words actually used in the statute and interpret them according to the usual ordinary import of the language used in framing them (People ex rel Younger v. Superior Court (1976) 16 Cal.3d 30, 40, 43 [127 Cal.Rptr. 122, 544 P.2d 1322]). We believe that the following definition of the term “firearm” comports with legislative intent in a prosecution under Penal Code section 417, subdivision (a): “The word, ‘firearm,’ includes a pistol, revolver or rifle, or any other device designed to be used as a weapon from which a projectile may be expelled by the force of any explosion or other form of combustion. An object which meets this definition is a firearm even if it is *Supp. 26 not loaded.” (See Pen. Code, § 417, subd. (a); CALJIC Nos. 17.15 and 17.23 (1977 revision). See also, Webster’s Third New Internat. Diet. (1961) p. 854; Black’s Law Diet. (4th ed. 1951) p. 761; 17 Words and Phrases (1958) p. 66 et seq.)
Even in the absence of a request, the trial court in a criminal case must instruct on the general principles of law relevant to the issues raised by the evidence. (People v. Sedeno (1974) 10 Cal.3d 703, 715 [112 Cal.Rptr. 1, 518 P.2d 913].) The general rule which provides that in defining the elements of a crime, it is enough for the court to instruct in the language of the statute where the defendant fails to request an amplification thereof will not prevail when the jury would have difficulty in understanding and applying the statute. Under such circumstances, a court must give additional guidance and clarification on its own motion. (People v. Graham (1969) 71 Cal.2d 303, 329 [78 Cal.Rptr. 217, 455 P.2d 153].)
The failure to give such an instruction might be harmless in some cases. (See People v. Allen (1978) 76 Cal.App.3d 748, 751-752; [143 Cal.Rptr. 164].) In this case, however, defendant testified that he held the non-gun and not a loaded revolver. The two pistols were similar in appearance. Yet, under the general instruction given, the juiy could have concluded that the non-gun was a firearm even though it was welded and could not fire a cartridge. Although the proffered defense instruction contained minor deficiencies, it did put the trial court on notice that this was a critical issue.
Under all these circumstances, we are required to reverse the conviction on this count.
For the guidance of the trial court, we will address one more issue. Under Penal Code section 417, it is unlawful to brandish either a firearm or deadly weapon, therefore, an instruction defining deadly weapon would also be mandatory {People v. Fuqua (1881) 58 Cal. 245, 247; People v. Graham, supra, 71 Cal.2d 303, 327-329).
In a prosecution under Penal Code section 417, subdivision (a), the prohibited use of the firearm or deadly weapon is defined by statute. It is not necessary to show that the possessor intended to inflict injury on a victim. Once it is shown that the weapon is exhibited in a rude, angry and threatening manner, the offense is complete and special instructions about the probable future use of the weapon would be irrelevant.
*Supp. 27 Therefore, when given in conjunction with CALJIC (misdemeanor) No. 16.290, and the special instruction concerning a firearm. CALJIC (misdemeanor) No. 16.291, it is a correct statement of the law and was properly given in this case. It provides: “A deadly weapon means any weapon, instrument, or object that is capable of being used to inflict death or great bodily injury.”[5]
Disposition
Appellant’s conviction of battery is affirmed.
Appellant’s conviction of violating Penal Code section 12021, subdivision (a) is reversed and remanded for a limited new trial on the question as to whether the earlier Nevada conviction was valid.
Appellant’s conviction of violating Penal Code section 417, subdivision (a) is reversed and remanded for a new trial.
The order on probation was premised on the assumption that appellant was convicted of three misdemeanor offenses. Since we have ordered a new trial on two counts, a supplemental probation report would be mandatory if this were a felony case. (Pen. Code, § 1203, subd. (a); People v. Rojas (1962) 57 Cal.2d 676, 682-683 [21 Cal.Rptr. 564, 371 P.2d 300].) However, in a misdemeanor case, referral to the probation officer is discretionary. (Pen. Code, § 1203, subd. (c).) Nevertheless, since the order on probation should be based upon actual convictions, and appellant may wish to show good conduct and rehabilitation during the time the appeal was pending (In re Stallings (1970) 5 Cal.App.3d 322, 329-330 [85 Cal.Rptr. 96]), the proper solution would be to grant appellant’s request to continue sentencing, to order a supplemental probation report and issue a new order on probation once the other counts are disposed of.
*Supp. 28 Appellant, John Norton, is directed to be present in the Municipal Court for the Santa Barbara-Goleta Judicial District on May 10, 1978, at 8:30 a.m. in the department of the judge then assigned to hear the criminal calendar. Further proceedings may resume at that time.
Stevens, P. J., and Rickard, J., concurred.

Appellant and David Norton are not related.

Our high court cited State ex rel Cloud v. Election Board (1934) 169 Okla. 363, 365-366 [36 P.2d 20, 94 A.L.R. 1007] for the proposition that an Oklahoma pardon blotted out the prior offense. However, two years before Terry was decided, an Oklahoma court held that a person twice convicted of a felony could be sentenced as a recidivist and that a prior pardon did not blot out the previous offense. (Scott v. Raines (Okla. Grim. 1962) 373 P.2d 267.)

This approach has been used in one criminal case involving search and seizure (People v. Orlosky (1974) 40 Cal.App.3d 935, 938-939 [115 Cal.Rptr. 598] and an auto forfeiture case, People v. One 1953 Ford Victoria (1957) 48 Cal.2d 595 [311 P.2d 480]).

For instance, in Murray v. State of Louisiana (5th Cir. 1965), 347 F.2d 825, a person convicted under a Louisiana recidivist statute sought habeas corpus relief claiming that he had been improperly convicted since he had been previously pardoned in Missouri. The court found that both states allowed pardoned offenses to be used for the purpose of determining whether the defendant was a recidivist. Hence, the court reasoned that there simply was no violation of the full faith and credit clause.

The second clause of Penal Code section 417 is set forth in the bracket portion of CALJIC (misdemeanor) No. 16.290. Since the accusatory pleading and evidence in this case relates to the first clause of that section, the bracketed portion need not be given in the event of a retrial on this count. The committee on jury instructions has failed to indicate when the bracketed portion should be given. Further, the term “unlawfully” found in this instruction is not defined. Perhaps the Legislature meant to recognize additional defenses (see Pen. Code, §§ 693 and 694; Garfield v. Peoples Fin. & Thrift Co. (1937) 24 Cal.App.2d 144, 153 [74 P.2d 1061]). Since CALJIC (misdemeanor) No. 16.290 is used in many cases, including certain homicide cases, (People v. Wilson (1967) 66 Cal.2d 749 [59 Cal.Rptr. 156, 427 P.2d 820], we invite the Committee on California Jury Instructions to clarify when the bracketed portion of the instruction should be given.