100 Cal.Rptr.2d 279 (2000)
83 Cal.App.4th 1084
The PEOPLE, Plaintiff and Respondent,
v.
Andrew Howard HALL, Defendant and Appellant.
No. C031119.
Court of Appeal, Third District.
September 27, 2000.
As Modified October 19, 2000.
Review Denied January 10, 2001.[*]
*281 Valerie G. Wass, under appointment by the Court of Appeal, Pasadena, for Defendant and Appellant.
Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Robert R. Anderson, Senior Assistant Attorney General, Stephen G. Herndon, Supervising Deputy Attorney General, Rachelle A. Newcomb, Deputy Attorney General, for Plaintiff and Respondent.
*280 KOLKEY, J.
Penal Code section 654 prohibits multiple punishments for "[a]n act or omission that is punishable in different ways by different provisions of law."[1] However, *282 the courts have long construed this provision not to bar multiple punishments where the act is one of violence against multiple victims (the multiple-victim exception). (People v. Latimer (1993) 5 Cal.4th 1203, 1212, 23 Cal.Rptr.2d 144, 858 P.2d 611 (Latimer); Neal v. State of California (1960) 55 Cal.2d 11, 20-21, 9 Cal.Rptr. 607, 357 P.2d 839 (Neal).)
The issue in this case is whether a single act of exhibiting a firearm in a threatening manner in the immediate presence of several peace officers in violation of section 417, subdivision (c), is punishable for as many times as there are peace officers present pursuant to the multiple-victim exception to section 654. We conclude that the plain language of section 654, its purpose, and the case law construing it compel a single punishment for a single act of exhibiting a firearm in violation of section 417, subdivision (c), regardless of the number of peace officers present. The crime of exhibiting a firearm "in the immediate presence of a peace officer" in violation of section 417, subdivision (c), is by its very definition, not committed upon a peace officer, but only in the presence of a peace officer. The multiple-victim exception to section 654 requires multiple victims, not multiple observers. Only once the exhibition of the firearm becomes an assault may the observers become victims, and may a single act warrant multiple punishment.

I. STATEMENT OF FACTS[2]
On December 17, 1995, the California Highway Patrol and the Trinity County Sheriffs Department received a report that an allegedly intoxicated man was driving recklessly and discharging a firearm from his vehicle. Officers identified the man as the defendant, Andrew Howard Hall. They discovered that he had two outstanding warrants for his arrest, and learned that he had returned to his residence.
The officers converged upon defendant's residence. On at least three occasions, they requested that he exit it. When he finally did so, he "was holding a loaded shotgun and appeared to be pointing it in the direction of the officers," according to the probation report. At that point, he was rushed by the officers and placed into custody.
Defendant pleaded no contest to three counts of exhibiting a firearm in the presence of peace officers in violation of section 417, subdivision (c), each count referring to a different officer.[3] On April 22, 1996, the trial court suspended imposition of sentence and placed the defendant on probation.
However, on October 26, 1998, probation was revoked and denied as result of defendant's violation of his conditions of probation. The trial court thereafter imposed consecutive sentences on each of the three counts of exhibiting a firearm.
On November 6, 1998, in a separate case, defendant pleaded no contest to one count of infliction of corporal injury (§ 273.5), was sentenced to three years for that conviction, and was resentenced on the three counts for exhibiting a firearm to subordinate terms of eight months each (one-third of the midterm of two years), resulting in an aggregate sentence of five years. Defendant appeals, contending that the imposition of consecutive terms for the three counts of exhibiting a firearm violates section 654.

II. DISCUSSION

A. The Multiple-Victim Exception to Section 654
Section 654 provides that "[a]n act or omission that is punishable in different *283 ways by different provisions of law" may not "be punished under more than one provision."[4]
"Although section 654 does not expressly preclude double punishment when an act gives rise to more than one violation of the same Penal Code section ..., it is settled that the basic principle it enunciates precludes double punishment in such cases also." (Neal, supra, 55 Cal.2d at p. 18, fn. 1, 9 Cal.Rptr. 607, 357 P.2d 839; italics added.)
However, the California Supreme Court in Neal, supra, 55 Cal.2d at p. 20, 9 Cal. Rptr. 607, 357 P.2d 839, construed section 654 to permit separate punishments for an act of violence against multiple victims because the underlying purpose of section 654's proscription against multiple punishment "is to insure that the defendant's punishment will be commensurate with his criminal liability":
"The purpose of the protection against multiple punishment is to insure that the defendant's punishment will be commensurate with his criminal liability. A defendant who commits an act of violence with the intent to harm more than one person or by a means likely to cause harm to several persons is more culpable than a defendant who harms only one person. For example, a defendant who chooses a means of murder that places a planeload of passengers in danger, or results in injury to many persons, is properly subject to greater punishment than a defendant who chooses a means that harms only a single person. This distinction between an act of violence against the person that violates more than one statute and such an act that harms more than one person is well settled. Section 654 is not'... applicable where ... one act has two results each of which is an act of violence against the person of a separate individual.'" (Neal, supra, 55 Cal.2d at pp. 20-21, 9 Cal.Rptr. 607, 357 P.2d 839, quoting People v. Brannon (1924) 70 Cal.App. 225, 235-236, 233 P. 88.)
A review of the relevant case law since Neal reveals that in each case where a criminal act qualified for the multiplevictim exception, the criminal actthat is, the crime of which defendant was convicted, including any allegations in enhancementwas defined by statute to proscribe an act of violence against the person, that is, as Neal, supra, 55 Cal.2d at p. 20, 9 Cal.Rptr. 607, 357 P.2d 839, put it, an act of violence committed "with the intent to harm" or "by means likely to cause harm" to a person. (E.g., People v. Miller (1977) 18 Cal.3d 873, 885, 135 Cal.Rptr. 654, 558 P.2d 552; In re Ford (1967) 66 Cal.2d 183, 57 Cal.Rptr. 129, 424 P.2d 681; In re Wright (1967) 65 Cal.2d 650, 56 Cal.Rptr. 110, 422 P.2d 998; People v. Cruz (1995) 38 Cal.App.4th 427, 45 Cal.Rptr.2d 148; People v. Masters (1987) 195 Cal.App.3d 1124, 241 Cal.Rptr. 511; People v. Prater (1977) 71 Cal.App.3d 695, 139 Cal.Rptr. 566.) Indeed, the California Supreme Court has stated that "[a] defendant may properly be convicted of multiple counts for multiple victims for a single criminal act only where the act prohibited by the statute is centrally an `act of violence against the person.'" *284 (Wilkoff v. Superior Court (1985) 38 Cal.3d 345, 351, 211 Cal.Rptr. 742, 696 P.2d 134, quoting Neal, supra, 55 Cal.2d at p. 20, 9 Cal.Rptr. 607, 357 P.2d 839; italics added.)
Hence, in Neal, the state high court rejected a section 654 challenge to consecutive sentences for two attempted murders, where the defendant threw gasoline into a couple's bedroom and ignited it, burning them. (Neal, supra, 55 Cal.2d at pp. 20-21, 9 Cal.Rptr. 607, 357 P.2d 839.) By definition, the crime of attempted murder is an act of violence committed against a person since it requires a specific intent to kill. (People v. Collie (1981) 30 Cal.3d 43, 62, 177 Cal.Rptr. 458, 634 P.2d 534.) Therefore, where multiple victims are involved, it qualifies for the multiple-victim exception.
Similarly, assault with a deadly weapon under section 245 qualified for the multiple-victim exception where the defendant intentionally shot a bullet at one victim which passed through the first victim and hit a second. (People v. Prater, supra, 71 Cal.App.3d at p. 699, 139 Cal.Rptr. 566.) "The gravamen of the crime defined by ... section 245 is the likelihood that the force applied or attempted to be applied will result in great bodily injury." (People v. Colantuono (1994) 7 Cal.4th 206, 217, 26 Cal.Rptr.2d 908, 865 P.2d 704, quoting People v. McCaffrey (1953) 118 Cal.App.2d 611, 618-619, 258 P.2d 557; italics in original.) Thus, the crime of assault with a deadly weapon is, by definition, an act of violence committed against a person, namely, one with the likelihood of causing harm to the person. It thus satisfies the multiple-victim exception when more than one victim is involved.
Likewise, the multiple-victim exception allowed the imposition of separate (albeit concurrent) sentences for assault with a firearm and for the discharge of a firearm at an occupied building, where four bullets were fired at a doorway where a security officer and others stood. (People v. Cruz, supra, 38 Cal.App.4th at pp. 434-435, 45 Cal.Rptr.2d 148.) The crime of discharging a firearm at an occupied building, by its very definition, requires that the defendant "maliciously and willfully discharge a firearm at an ... occupied building" (§ 246, italics added), thereby constituting an act of violence that is committed either "with the intent to harm ... or by means likely to cause harm" to one or more persons. (Neal, supra, 55 Cal.2d at p. 20, 9 Cal.Rptr. 607, 357 P.2d 839.) When different victims are involved, as in People v. Cruz, supra, 38 Cal.App.4th 427, 45 Cal.Rptr.2d 148, the multiple-victim exception is satisfied.
So, too, the multiple-victim exception permits punishment for both assault with a deadly weapon and discharge of a firearm at an occupied motor vehicle in violation of section 246, where the defendant shot four or five shots at a vehicle carrying three people, one of whom was hit. (People v. Masters, supra, 195 Cal. App.3d 1124, 241 Cal.Rptr. 511.) Again, "[defendant's] violent actions were performed in a manner likely to cause harm to all three individuals in the vehicle, and in fact did seriously injure one person...." (Id. at p. 1128, 241 Cal.Rptr. 511.)
Similarly, robbery "is violent conduct warranting separate punishment for the injury inflicted on each robbery victim," and therefore the crime, by definition, can come within the multiple-victim exception in the case of multiple convictions involving multiple victims. (People v. Champion (1995) 9 Cal.4th 879, 935, 39 Cal.Rptr.2d 547, 891 P.2d 93, disapproved on another ground in People v. Ray (1996) 13 Cal.4th 313, 369, fn. 2, 52 Cal.Rptr.2d 296, 914 P.2d 846 (cone. opn. of George, J.); People v. Miller, supra, 18 Cal.3d at p. 886, 135 Cal.Rptr. 654, 558 P.2d 552; In re Ford, supra, 66 Cal.2d 183, 57 Cal.Rptr. 129, 424 P.2d 681.) Likewise, the courts have held that kidnapping for robbery and robbery may be punished separately, despite the fact they are part of one criminal transaction with a single objective, where different victims are involved. (In re Ford, supra, 66 Cal.2d 183, 57 Cal.Rptr. *285 129, 424 P.2d' 681; accord, In re Wright, supra, 65 Cal.2d at p. 656, 56 Cal.Rptr. 110, 422 P.2d 998.)
In contrast, even though it holds the potential for violence, "[b]urglary, standing alone is not a violent crime for purposes of the multiple victim exception." (People v. Centers (1999) 73 Cal.App.4th 84, 99, 86 Cal.Rptr.2d 151; accord, People v. Miller, supra, 18 Cal.3d at p. 886, 135 Cal.Rptr. 654, 558 P.2d 552.) Burglary, as defined, simply does not require an act of violence committed with the intent to harm or by means likely to harm a person.
On the other hand, where the burglary has been committed in conjunction with an act of violence that qualifies for treatment as an enhancement, the multiple-victim exception can be satisfied. Thus, a burglary, in the course of which the defendant intended to and did inflict great bodily injury on an occupant of the premises, as defined under the former version of section 461, qualified as an act of violence within the multiple-victim exception: "Although a burglary does not necessarily involve an act of violence against any person, sections 459 and 461 define the instant crime as a burglary in the course of which the defendant intends to and does inflict great bodily injury on an occupant of the premises burglarized. Thus the burglary alleged, proved and found to be true is a crime of violence committed against [the victim]." (People v. Miller, supra, 18 Cal.3d at p. 886, 135 Cal.Rptr. 654, 558 P.2d 552.) Likewise, in People v. Centers, supra, 73 Cal.App.4th at p. 88, 86 Cal.Rptr.2d 151, the Court of Appeal held that "a burglary is a violent crime for purposes of the `multiple victim' exception when the jury finds that, in the commission of the burglary, the defendant personally used a firearm." The court explained that the jury's finding that the defendant personally used a firearm under section 12022.5, subdivision (a), in the commission of the burglary, allowed the crime to be treated as a violent one because "[t]he 'use' of a firearm has been defined as either `conduct which actually produces harm ... [or] conduct which produces a fear of harm or force by means or display of a firearm....' [Citations.]" (People v. Centers, supra, 73 Cal.App.4th at p. 99, 86 Cal.Rptr.2d 151.)
Accordingly, in each case where the multiple-victim exception was satisfied, the qualifying crime, at least in conjunction with any allegations in enhancement, was defined to proscribe an act of violence committed against the person.

B. Section 417
Section 417, subdivision (c), the crime at issue here, provides in pertinent part: "Every person who, in the immediate presence of a peace officer, draws or exhibits any firearm, whether loaded or unloaded, in a rude, angry, or threatening manner, and who knows, or reasonably should know, ... that he or she is a peace officer engaged in the performance of his or her duties ..." is guilty of a crime.
Hence, unlike attempted murder, assault with a deadly weapon, or discharging a firearm at an occupied building, "draw[ing] or exhibiting] any firearm, whether loaded or unloaded," does not require, as a matter of the crime's definition, an intent to harm, or a likelihood of harming, any person. Instead, it is a general intent crime that does not require an intent beyond that to do the proscribed act. (See People v. Hood (1969) 1 Cal.3d 444, 454, 456-457, 82 Cal.Rptr. 618, 462 P.2d 370; People v. Norton (1978) 146 Cal.Rptr. 343, 80 Cal.App.3d Supp. 14, 26.) "When the evidence shows the weapon was exhibited in a rude, angry or threatening manner, the offense is complete." (People v. Mercer (1980) 113 Cal.App.3d 803, 806, 169 Cal.Rptr. 897; People v. McKinzie (1986) 179 Cal.App.3d 789, 794, 224 Cal. Rptr. 891.)
Admittedly, brandishing a firearm can result in violence. Indeed, "[t]he chief evil to be avoided by criminalizing exhibition of weapons is the potential for further violence...." (People v. Simons (1996) 42 Cal.App.4th 1100, 1109, 50 Cal.Rptr.2d 351.)
However, the potential for violence does not make a crime violent any *286 more than the potential for romance makes a date an affaire. For instance, burglary is also a crime of significant potential violence since "burglary laws are based primarily upon a recognition of the dangers to personal safety created by the usual burglary situation the danger that the intruder will harm the occupants in attempting to perpetrate the intended crime or to escape and the danger that the occupants will in anger or panic react violently to the invasion, thereby inviting more violence. The laws are primarily designed ... not to deter the trespass and the intended crime, which are prohibited by other laws, so much as to forestall the germination of a situation dangerous to personal safety." (People v. Clayton (1998) 65 Cal.App.4th 418, 421-422, 76 Cal. Rptr.2d 536, quoting People v. Gauze (1975) 15 Cal.3d 709, 715, 125 Cal.Rptr. 773, 542 P.2d 1365, quoting People v. Lewis (1969) 274 Cal.App.2d 912, 920, 79 Cal. Rptr. 650.) Nonetheless, despite this potential for violence, burglary is "not a violent offense for purposes of the application of ... section 654's ban on multiple punishment." (People v. Guzman (1996) 45 Cal.App.4th 1023, 1028, 53 Cal.Rptr.2d 67; accord, People v. Miller, supra, 18 Cal.3d at p. 886, 135 Cal.Rptr. 654, 558 P.2d 552.)
As noted, whether a crime constitutes an act of violence that qualifies for the multiple-victim exception to section 654 depends upon whether the crime (in conjunction with any allegations in enhancement) is defined to proscribe an act of violence against the person. Indeed, this is the only way that the multiple-victim exception to section 654's proscription against multiple punishment makes sense: The existence of an additional victim of the same violent act creates a separate offense, with a different item of proof, in those cases where the crime is defined in terms of an act of violence against a person. (See People v. Brannon, supra, 70 Cal.App. at pp. 235-236, 233 P. 88, cited by Neal, supra, 55 Cal.2d at p. 21, 9 Cal.Rptr. 607, 357 P.2d 839.) And the defendant "who commits an act of violence with the intent to harm more than one person or by a means likely to cause harm to several persons is more culpable than a defendant who harms only one person." (Neal, supra, 55 Cal.2d at p. 20, 9 Cal.Rptr. 607, 357 P.2d 839.)
The California Supreme Court's decisions in Wilkoff v. Superior Court, supra, 38 Cal.3d 345, 211 Cal.Rptr. 742, 696 P.2d 134, and People v. McFarland (1989) 47 Cal.3d 798, 254 Cal.Rptr. 331, 765 P.2d 493, are instructive. In Wilkoff v. Superior Court, supra, the state high court ruled that "one instance of driving under the influence which causes injury to several persons is chargeable as only one count of driving under the influence" in violation of Vehicle Code section 23153. (Wilkoff, supra, 38 Cal.3d at p. 353, 211 Cal.Rptr. 742, 696 P.2d 134.) The court reasoned that the act prohibited by Vehicle Code section 23153 is the act of driving while intoxicated, and "a charge of multiple counts of violating a statute is appropriate only where the actus reus prohibited by the statutethe gravaman of the offensehas been committed more than once." (Wilkoff, supra, 38 Cal.3d at p. 349, 211 Cal. Rptr. 742, 696 P.2d 134.) In so concluding, the court distinguished such crimes as murder, manslaughter, and robbery, which are defined in terms of an act of violence against a person and thus constitute separate offenses when committed against separate victims:
"In contrast to the crimes of murder, manslaughter, administering poison, robbery and sex offensesall of which are defined in terms of an act of violence against the personthe act prohibited by section 23153 is defined in terms of an act of driving: the driving of a vehicle while intoxicated and, when so driving, violating any law relating to the driving of a vehicle. The actus reus of the offense does not include causing bodily injury." (Id. at p. 352, 211 Cal.Rptr. 742, 696 P.2d 134.)
In People v. McFarland, supra, 47 Cal.3d 798, 254 Cal.Rptr. 331, 765 P.2d 493, the California Supreme Court concluded that section 654 does not prohibit separate punishment where a drunk driver kills one victim (vehicular manslaughter) *287 and injures another (causing bodily injury while driving under the influence of alcohol [Veh.Code § 23153, subd. (a)]) because "vehicular manslaughter with gross negligence constitutes a crime of violence against the person" (People v. McFarland, supra, at p. 803, 254 Cal.Rptr. 331, 765 P.2d 493) and thus "where, as here, a defendant commits vehicular manslaughter with gross negligencean act of violence against the personhe may properly be punished for injury to a separate individual that results from the same incident." (Id. at p. 804, 254 Cal.Rptr. 331, 765 P.2d 493, fn. omitted.) The court distinguished Wilkoff: "[O]ur holding [in Wilkoff, supra, 38 Cal.3d 345, 211 Cal.Rptr. 742, 696 P.2d 134] was premised upon the apparent legislative intent that only one violation of Vehicle Code section 23513, subdivision (a) was contemplated regardless of the number of persons injured. We discern no such legislative intent when a drunk driver kills one individual and injures another. The defendant who commits an act of violence by means likely to injure more than one person is properly subject to separate punishment." (People v. McFarland, supra, at p. 804, 254 Cal.Rptr. 331, 765 P.2d 493.)
The distinction between assault with a deadly weapon under section 245 and brandishing a firearm under section 417, subdivision (c), is analogous to the distinction drawn in McFarland. and Wilkoff between vehicular manslaughter and felony drunk driving. Both assault and vehicular manslaughter are defined in terms of an act of violence against the person, whereas felony drunk driving and brandishing a weapon are not.
The People argue that brandishing a firearm creates a "risk of violence," relying on cases holding that "solicitation for the murder of multiple victims ... precludes application of section 654, even though an act of violence has not yet occurred." (E.g., People v. Davis (1989) 211 Cal. App.3d 317, 323-324, 259 Cal.Rptr. 348; People v. Williams (1988) 201 Cal.App.3d 439, 445-446, 247 Cal.Rptr. 200; People v. Cook (1984) 151 Cal.App.3d 1142, 1147, 199 Cal.Rptr. 269.)
However, unlike exhibiting a firearm, the crime of solicitation of murder requires "the intent that the crime [of murder] be committed." (§ 653f, subd. (c).) Thus, solicitation of murder includes an intent to harm an individual, which places the defendant's conduct within the multiple-victim exception if more than one victim is involved. (Neal, supra, 55 Cal.2d at p. 20, 9 Cal.Rptr. 607, 357 P.2d 839.) In People v. Cook, supra, 151 Cal.App.3d 1142, 199 Cal.Rptr. 269, for instance, the Court of Appeal concluded that a solicitation to commit murder against four people came within the multiple-victim exception to section 654 because it was a solicitation of "the commission of four separate violent acts." (People v. Cook, supra, 151 Cal. App.3d at p. 1147,199 Cal.Rptr. 269.)
By contrast, the crime of brandishing a firearm does not require an intent to harm or the commission of an act likely to harm others. As noted, more than the potential for violence is necessary to qualify a crime as violent for purposes of the multiplevictim exception to section 654. Otherwise, burglary would be a violent crime for that purpose, and it is not. (E.g., People v. Miller, supra, 18 Cal.3d at p. 886, 135 Cal.Rptr. 654, 558 P.2d 552.)[5]
Relying on People v. Masters, supra, 195 Cal.App.3d 1124, 241 Cal.Rptr. 511, the People suggest that brandishing a firearm is analogous to discharging a firearm at a vehicle containing multiple occupants, which has qualified for the multiplevictim exception under section 654. However, discharging a firearm at an occupied vehicle in violation of section 246 requires that the defendant "maliciously and willfully discharge a firearm at an ... occupied motor vehicle" (§ 246); thus, the crime, as defined, is likely to cause *288 harm to the occupants. Indeed, in People v. Masters, the court concluded that the discharge of the firearm had been "performed in a manner likely to cause harm to all three individuals in the vehicle, and in fact did seriously injure one person," thereby falling within the multiple-victim exception. (195 Cal.App.3d at p. 1128, 241 Cal.Rptr. 511.) By contrast, the crime of exhibition of a firearm is not defined to require likely harm to an individual.
Accordingly, a violation of section 417, subdivision (c), does not constitute an act of violence committed "with the intent to harm more than one person or by a means likely to cause harm to several persons" (Neal, supra, 55 Cal.2d at p. 20, 9 Cal. Rptr. 607, 357 P.2d 839), and thus does not come within the multiple-victim exception of section 654.

C. Application of Section 65 to Section 417, Subdivision (c)
We would be remiss, however, in concluding our analysis without returning to the statutory language and the purpose of section 654. Where the case law has construed a statute in a manner that departs from its literal languagepresumably to better comport with the Legislature's intentwe must be careful that blind adherence to the case law does not cause us to lose sight of the statutory language and purpose from which that case law has arisen.
In this case, the statutory language and purpose compel our conclusion that the single act of exhibiting a firearm in the presence of a peace officer in violation of section 417, subdivision (c), cannot be punished as many times as there are peace officers observing the act.
First, the plain language of section 654 bars multiple punishment for a single "act or omission." It is undisputed that here defendant's three sentences under section 417, subdivision (c), arose from defendant's single act of exhibiting a firearm.
Second, the purpose of the statute's proscription against multiple punishments "is to insure that the defendant's punishment will be commensurate with his criminal liability." (Neal, supra, 55 Cal.2d at p. 20, 9 Cal.Rptr. 607, 357 P.2d 839.) The culpability of the single act of exhibiting a firearm "in the immediate presence of a peace officer" in violation of section 417, subdivision (c)without moredoes not depend upon the number of people who observe the brandishing. The crime, as defined, is not committed upon the peace officers who are present, but is merely committed in their presence. Only once the brandishing becomes an assault do the observers become victims, and does culpability increase with the number of victims.
The People contend that since there were three officers outside defendant's home, there were three victims of defendant's brandishing, but this argument would suggest that the single act of exhibiting a firearm could have been punished 10 times if 10 officers were present.
However, the multiple-victim exception is just that: a multiple-victim exception, not a multiple-observer exception. Assaults have victims; exhibitions have observers. And, as mentioned, the crime of exhibiting a firearm under section 417, subdivision (c), does not act upon an officer, but is only committed in the presence of an officer.
We do not underestimate the seriousness of the risk faced by peace officers when a person brandishes a firearm in an angry manner, but its seriousness lies in the risk that the crime could evolve into an assault. However, our criminal laws punish based on the crime committed, not on the crime not yet committed.
The trial court erred when it imposed three consecutive sentences for the single exhibition of a firearm in violation of section 417, subdivision (c). It should have stayed two of the terms. (People v. Kane (1985) 165 Cal.App.3d 480, 488-89, 211 Cal.Rptr. 628.)[6]

*289 DISPOSITION
The judgment is modified as follows: The sentences for counts 3 and 4 (two of the three brandishing convictions) are stayed pending successful service of the balance of defendant's sentence, at which time the stay shall become permanent. (See People v. Miller, supra, 18 Cal.3d at pp. 886, 888, 135 Cal.Rptr. 654, 558 P.2d 552.) As modified, the judgment is affirmed. The trial court is directed to prepare a corrected abstract of judgment and to forward a copy thereof to the Department of Corrections.
RAYE, Acting P.J., and MORRISON, J., concur.
NOTES
[*] Baxter, J., Chin, J., and Brown, J., dissented.
[1] Unless otherwise indicated, all further statutory references are to the Penal Code.
[2] Since defendant pleaded no contest to the charges under section 417, subdivision (c), this statement of facts is taken from the probation report and recommendation.
[3] Defendant was originally charged with four counts of felony assault with a firearm pursuant to section 245, subdivision (d)(1), and a misdemeanor count of unlawful possession of more than 28.5 grams of marijuana.
[4] We quote from the current version of section 654, although it was amended in 1997, following defendant's firearm offenses, because the 1997 amendment made no material revisions to that portion of the statute relevant to the issue on appeal.

At the time of defendant's firearm offenses, section 654 provided in pertinent part: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one...." (Stats. 1977, ch. 165, § 11, p. 644.)
In 1997, section 654 was amended to require that where the act or omission is punishable in different ways, the defendant is to be punished under the provision that provides for the longest potential term of imprisonment: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision ..." (§ 654, subd. (a); Stats. 1997, ch. 410, § 1.)
[5] People v. Williams, supra, 201 Cal.App.3d at pp. 445-446, 247 Cal.Rptr. 200, and People v. Davis, supra, 211 Cal.App.3d at pp. 323-324, 259 Cal.Rptr. 348, also cited by the People, relied on, and adopted the reasoning of, People v. Cook, supra, 151 Cal.App.3d at p. 1147, 199 Cal.Rptr. 269, and thus are distinguishable for the same reason as People v. Cook.
[6] We do not reach the issue whether the two brandishing counts whose sentences will now be stayed should also be stricken by virtue of the fact that there was but a single exhibition of a firearm. The parties did not argue or brief this issue, which raises the additional issue whether the defendant is estopped or otherwise prohibited from raising a challenge to the two counts in light of his agreement to plead no contest to three brandishing counts, instead of the originally charged offenses of felony assault with a firearm. (See People v. Hester (2000) 22 Cal.4th 290, 295, 92 Cal. Rptr.2d 641, 992 P.2d 569; In re Griffin (1967) 67 Cal.2d 343, 347, 62 Cal.Rptr. 1, 431 P.2d 625.) Accordingly, we express no view on this issue.