Filed 9/23/14  P. v. Miranda CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>MANUEL MIRANDA,<br><br>    Defendant and Appellant. | F066164<br><br>(Super. Ct. No. MCR0422651)<br><br>**OPINION** |

-ooOoo-

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Madera County.  Joseph A. Soldani, Judge.

William A. Malloy, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein and Catherine Chatman, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

[*]Before Poochigian, Acting P.J., Peña, J. and Chittick, J.[†]

[†]Judge of the Fresno Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

## INTRODUCTION

Defendant Manuel Miranda was convicted of conspiracy to possess and sell methamphetamine, transportation of methamphetamine, and using a false compartment in a vehicle with intent to transport. At sentencing, the trial court imposed a total of 12 years 4 months in prison, including a term of 1 year 4 months for use of the false compartment.

On appeal, defendant contends the trial court erred in denying his request that it stay imposition of punishment for the use of a false compartment charge pursuant to Penal Code[1] section 654 because it involves the same intent and objective as the transportation count. We agree with defendant, finding the use of a false compartment involves the same intent and objective as that associated with the transportation of methamphetamine. We will therefore modify and affirm the judgment.

Additionally, following plaintiff's separate contention that the abstract of judgment should be amended to reflect defendant was tried by a jury, rather than pleading guilty, and that defendant was sentenced pursuant to section 667, subdivisions (b) through (i), we will direct the trial court to amend the abstract of judgment accordingly.

## BRIEF FACTUAL SUMMARY AND PROCEDURAL BACKGROUND[2]

In the summer and fall of 2011, the California Department of Justice, Bureau of Narcotic Enforcement, with the assistance of other law enforcement agencies, conducted an investigation into methamphetamine trafficking. As a part of this investigation, methamphetamine was purchased from Ricardo Lopez Diaz by an undercover agent. On the first occasion, the undercover agent purchased 116 grams of methamphetamine for $2,900. On the second occasion, another quarter pound of methamphetamine was purchased. Each purchase was observed by agents performing surveillance on the ground and from the air.

---

[1]All further statutory references are to the Penal Code unless otherwise indicated.

[2]Additional or specific facts will be discussed as necessary to our analysis.

2.

A third undercover buy occurred on October 28, 2011. On that occasion, the undercover agent purchased a total of a pound of methamphetamine for $10,000 from Diaz. Surveillance was in place on this occasion as well.

Another buy was to take place on November 3, 2011. Surveillance was again in place, however, Diaz encountered difficulty obtaining the methamphetamine from his favored source. Diaz contacted another source—located in Bakersfield—in order to accommodate the buyer. Arrangements were made wherein Diaz would sell several pounds of methamphetamine to the undercover agent after receiving that substance from his Bakersfield source—Luis Robert Garcia—by way of a delivery driver. Specifically, the driver would transport the methamphetamine from Bakersfield to Madera, where it would then be provided to Diaz with the understanding it would ultimately be sold by Diaz to the undercover officer.

On November 3, 2011, defendant was observed leaving his hometown of Firebaugh in a white truck, and driving south to Bakersfield. Once in Bakersfield, he went to Garcia's home. Accompanied by Garcia, defendant was observed visiting a store and trailer park. Although under surveillance, defendant was not seen leaving the trailer park area. Later, however, after wiretaps indicated defendant was to drive from Bakersfield to Madera where he would meet Diaz at a Jack in the Box, agents observed defendant driving a red Ford Explorer, northbound on Highway 99 between Fresno and Madera.

Once defendant arrived in the parking lot of the Jack in the Box, he followed Diaz to a home located on Owens Street in Madera. Defendant backed the Ford Explorer into the home's garage; the garage door was closed. Several minutes later, defendant departed in the Ford Explorer and headed towards Firebaugh.

Meanwhile, the undercover agent and Diaz agreed the exchange of six pounds of methamphetamine would have to wait until the following day, or November 4, 2011. Instead, however, a number of search warrants were executed on that date, and arrests were made. Defendant was arrested that morning after he was stopped in Firebaugh

driving the Ford Explorer. A search of the vehicle revealed a hidden compartment between the second and third row seats. A large digital scale and $7,500 in cash were in the compartment; no drugs were found. Following execution of a search warrant, the drugs were located in a storage unit containing Diaz's possessions.

Consequently, defendant was charged with conspiracy to sell methamphetamine (§ 182, subd. (a)(1); count 1), transportation of methamphetamine (Health & Saf. Code, § 11379, subd. (a); count 2), and use of a false compartment with the intent to transport methamphetamine (Health & Saf. Code, § 11366.8, subd. (a); count 3). It was further alleged the methamphetamine weighed in excess of one kilogram (Health & Saf. Code, § 11370.4, subd. (b)(1)) and that defendant had a prior strike conviction (§ 667, subds. (b)-(i)), to wit, robbery (§ 211) in 2004.

The jury found defendant guilty of all counts. It also found the weight enhancement true. Thereafter, defendant admitted the strike prior allegations. At sentencing, the trial court imposed an eight-year sentence for the transportation of methamphetamine (count 2), a concurrent eight-year term for conspiracy to commit sales of methamphetamine (count 1)—stayed pursuant to section 654, and a 16-month sentence for use of a false compartment to transport a controlled substance (count 3). A three-year weight-related enhancement was also imposed, for a total of 12 years 4 months in prison.

## DISCUSSION

### I.     The Applicability of Section 654 to Count 3

Defendant contends the evidence establishes he possessed the methamphetamine and used the false compartment in order to transport that substance. Thus, because that course of conduct was incident to one objective, the trial court erred by failing to stay imposition of the 16-month sentence on count 3. Plaintiff argues use of the false

compartment involves a separate objective: concealment. Under these facts, we agree with defendant.**3**

### Relevant Legal Principles

Section 654, subdivision (a) provides as follows:

> "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution of the same act or omission under any other."

The statute "precludes multiple punishment for a single act or omission, or an indivisible course of conduct. [Citations.]" (*People v. Deloza* (1998) 18 Cal.4th 585, 591.) If a defendant is convicted under two statutes for one act or indivisible course of conduct, section 654 requires the sentence for one conviction be imposed, and the other imposed and then stayed. (*Deloza*, at pp. 591–592.) "Section 654 does not allow any multiple punishment, including either concurrent or consecutive sentences. [Citation.]" (*Id*. at p. 592.) The correct procedure is to impose a sentence for each count and enhancement and then to stay execution of sentence as necessary to comply with section 654. (*People v. Duff* (2010) 50 Cal.4th 787, 795–796.) The statute serves the purpose of preventing punishment that is not commensurate with a defendant's criminal liability. (*People v. Hall* (2000) 83 Cal.App.4th 1084, 1088, disapproved on other grounds in *People v. Correa* (2012) 54 Cal.4th 331, 343-344.)

"Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." (*Neal v. State of*

---

**3**Although the prosecutor argued the use of the false compartment occurred on November 4, 2011, when defendant "ferr[ied] large sums of cash about … to avoid police detection," we note plaintiff makes no such contention beyond the use of the compartment on November 3, 2011.

5.

*California* (1960) 55 Cal.2d 11, 19, disapproved on other grounds in *People v. Correa*, *supra*, 54 Cal.4th at pp. 343-344.)

"If [a defendant] entertained multiple criminal objectives which were independent of and not merely incidental to each other, he may be punished for independent violations committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct." (*People v. Beamon* (1973) 8 Cal.3d 625, 639.)

Whether there was more than one intent or objective is a question of fact for the trial court and will be upheld on appeal if there is substantial evidence to support it. Where the trial court does not make an express finding, an implied finding that the crimes were divisible inheres in the judgment and must be upheld if supported by the evidence. (*People v. Nelson* (1989) 211 Cal.App.3d 634, 638.)

**The Sentence Imposed**

After explaining its denial of defendant's motion made pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 during sentencing proceedings, the court addressed the following:

> "[THE COURT:] Before I proceed with the sentencing in this matter I could perhaps address an issue that has occurred to the Court maybe inappropriately so, but I just need to get it out there and then I may ask counsel for their comments and if they need time to address it I'll be happy to give then a continuance to address that. And that is the issue of 654 as it relates to Count 1 and Count 2.[4] Do we have a 654 issue? Meaning, that the Court has a concern about whether it can impose sentence on both of those counts or whether it needs to stay sentence on one of those counts? It appears to be the conspiracy included transportation, and that's—that's the acts that the defendant was involved in as part of the conspiracy.
>
> "Is that something counsel can address today or do you need time to address it?

---

[4]The probation report recommended the imposition of consecutive terms for counts 2 and 3.

6.

"[DEFENSE COUNSEL]:  From the defense, that was an issue that the defense was going to raise, Your Honor.  I believe that the three offenses for which [defendant] was convicted stem from the same incident or course of conduct and, therefore, … 654 prescribes multiple punishments for that single act and course of conduct.  So I would take the position it does apply to Counts 1, 2 and 3 in this instance.

"[PROSECUTOR]:  And, Your Honor, as far as Count 1, the conspiracy, it's my understanding that that's the agreement even though the act wasn't completed the crime of conspiracy still could have been committed the basic agreement is separate in doing the act I would argue there's not a 654 issue.

"THE COURT:  All right.  I'd like to see some legal authority on this.  Something counsel feels would be appropriate.  I understand the defense is going to take the position 654 applies.  The People are going to take the position it doesn't, but I'd be more comfortable if there was some—

"[DEFENSE COUNSEL]:  Your Honor, if I may.

"THE COURT:  —legal authority submitted.

"[DEFENSE COUNSEL]:  It appears the current Supreme Court case on this is People versus Jones, no relationship to this case.  I have an advance case number of S179552.  It's an opinion from June 21st of this year.  And in that opinion they overrule In Re Hayes, and People versus Harrison and I think come to the conclusion that I stated that an incident a single incident or a course of conduct, even though separate crimes can be charged out of that, that 654 says that multiple punishment is not appropriate.  So given that, the defense has no objection to a continuance so that this matter can be looked at further by the Court and by the People.

"THE COURT:  All right.  I really would like to look at this issue.  The Court has a concern about it.  It's not appropriate—the recommendation is for consecutive sentences.  If it's not appropriate, the Court doesn't want to impose it."

When sentencing proceedings resumed on November 9, 2012, the trial court stated as follows:

"THE COURT:  The Court has reviewed the file.  I've reviewed the Probation Department report recommendation, as well as letters on behalf of the defendant; certificate.  Reviewed the documents regarding the issue of 654.  And the requirement to stay certain offenses.

7.

"I'm going to tell Counsel what I'm inclined to do at this point. And I'll be happy to hear any additional arguments regarding either the sentencing or the 654 issue.

"In the Court's mind, the defendant does not qualify for probation. He's ineligible for probation. The Court's inclined to sentence him to—and I'll go through the reasons why when I do the sentencing—the aggravated term of eight years for Count 2. And then on Count [1], I'll impose the aggravated term of eight years and I'll run that concurrent to Count 2. And I'll stay that pursuant to 654 ….

"Count 3 the Court's inclined to sentence him to 16 months, which is one third the median term consecutive. I'm not going to stay that count. I don't believe it's appropriate in the facts of this case. And then an additional three years state prison consecutive enhancement pursuant to 11370.4(b)(1) of the Health and Safety Code. An aggregate term of 12 years and four months. [¶] Anything on behalf of the People?

"[PROSECUTOR]: Your Honor, when I wrote my brief I had listed reasons why I thought the Court could impose [sentences] for all three charges but given what the Court had said last time we were here and considering that I think this may be the wisest course of action to prevent appellate action or things in the future so the People would submit on what the Court's decision is.

"THE COURT: All right. And on the defense what additional would you like to add?

"[DEFENSE COUNSEL]: Just two comments briefly. Regarding the 654 issue, um, I do believe the Court could, if it was willing, to stay the term for Count 3. And I think this is a situation under *People v. Jones* that this is a defendant's actions on the facts of this case and his involvement in this case show one course of conduct; that I think all these charges arise out of and that being the driving from Firebaugh to Bakersfield, Bakersfield back to Madera. And that being all the facts that were presented in the case. And certainly one course of conduct in that regard. And we would ask the Court to do so."

After addressing the aggravating factors, the trial court imposed an eight-year sentence for transportation of methamphetamine (count 2), and an eight-year sentence for conspiracy to transport methamphetamine (count 1), which it stayed pursuant to section 654. The court also imposed a 16-month term for the use of a false compartment (count

3).**5**  It did not stay imposition of that term, finding "[t]his vehicle that was used was sophisticated.  It had a sealed compartment.  It was difficult to locate.  Difficult to open.  Basically used for the transportation and the concealment of drugs and/or money."

**Our Analysis**

Section 654 precludes multiple punishments for a single act even where that act violates more than one statute, constituting more than one crime.  Defendant's argument that his use of the false compartment and transportation of the methamphetamine amounted to a single act or course of conduct, requiring a stay of the 16-month sentence imposed for use of that false compartment, is persuasive.

While plaintiff asserts defendant's use of the false compartment involved the objective of avoiding "detection by law enforcement," the fact remains the concealment was part and parcel to the transportation of the methamphetamine.  Defendant's use of the false compartment pertained only to the November 3d or 4th occasion involving the transportation of methamphetamine.  The third amended information filed June 12, 2012, reads as follows:

> "COUNT 3  [¶] For a further and separate cause of action, being a different offense of the same class of crimes and offenses as the charge set forth above, the said defendant(s) MANUEL MIRANDA did, on or about November 4, 2011, in the County of Madera, State of California, commit a FELONY, namely, violation of Section 11366.8(a) of the Health & Safety Code of the State of California, in that the said *defendant did possess*, *use and control a false compartment with the intent to store*, *conceal*, *smuggle and transport a controlled substance within the false compartment*." (Italics added.)

There are no facts suggesting defendant used the false compartment on more than one occasion.

---

**5**Health and Safety Code section 11366.8, subdivision (a) provides in pertinent part: "Every person who … uses … a false compartment with the intent to store, conceal, smuggle, or transport a controlled substance within the false compartment shall be punished by imprisonment …."

Plaintiff contends there is evidence in the record from which the trial court could infer defendant "would be using the false compartment on an ongoing basis." Plaintiff provides a number of citations to the record concerning a conversation recorded between Diaz and the drug supplier Garcia. In that conversation, there is discussion about Diaz's need for an alternate delivery driver on the occasion of the next deal. A review of that conversation reveals two things. First, after the then-impending transaction, the time schedule would return to those employed in the earlier three transactions. A reasonable inference is that the woman referred to in the conversation as the regular delivery driver would resume acting in that capacity. Second, as plaintiff suggests, there is reference to an alternate driver. However, it is unclear whether the other driver is the woman's husband or some other individual. In any event, there is nothing in the record to suggest the other individual would be defendant. In fact, when Deputy Nicholas Davis testified about this particular wiretap conversation on cross-examination, he indicated he did not believe the conversation pertained to defendant.

In *People v. Latimer* (1993) 5 Cal.4th 1203, the defendant pled guilty to two counts of forcible rape and one count of kidnapping. He admitted inflicting great bodily injury. (*Id.* at p. 1206.) The trial court sentenced defendant to six years each for the rape convictions, five years for the great bodily injury enhancement, and an additional one year eight months for the kidnapping conviction. (*Ibid.*) On review, the Court of Appeal found the kidnapping was carried out only to further the defendant's intent and objective to rape his victim. As a result, the appellate court held separate punishment for the kidnapping count was prohibited by section 654. (*Latimer*, at p. 1207.) The California Supreme Court affirmed the Court of Appeal's holding. After a lengthy discussion regarding the decision in *Neal v. California*, *supra*, 55 Cal.2d 11, the *Latimer* court ultimately concluded that "[a]lthough the kidnapping and the rapes were separate acts, the evidence does not suggest any intent or objective behind the kidnapping other than to facilitate the rapes." (*Latimer*, *supra*, at p. 1216.) Likewise here, although the transportation of methamphetamine and use of the false compartment to conceal that

10.

substance can be said to be separate acts, the evidence does not suggest any intent behind the use of the false compartment other than to facilitate the transportation of methamphetamine.

We find it significant here that defendant was not the owner of the Ford Explorer equipped with the false compartment, and his participation was limited to a single occasion.[6] The vehicle was registered to a woman believed to be Garcia's girlfriend. In any event, it was controlled by Garcia. Defendant used Garcia's vehicle in place of his own. The evidence did not show defendant had used Garcia's vehicle in the past or that defendant had any plans to use it for future drug transactions.

Plaintiff argues in part that the legislative intent behind Health and Safety Code section 11366.8 reveals the statute was enacted to punish those who both transport controlled substances and use a false compartment in doing so. In *People v. Arias* (2008) 45 Cal.4th 169, the court addressed whether a false compartment, for purposes of the statute, included original factory equipment such as a glove compartment. In answering that question in the negative, the *Arias* court noted the following:

> "The Senate Judiciary Committee's analysis of Assembly Bill No. 1760 (1993-1994 Reg. Sess.) observed that according to the law enforcement agency sponsors of the measure, during the first three months of 1993, 'approximately 100 vehicles were interdicted at the California-Mexico border utilizing a variety of *fabricated* or *altered* storage compartments or parts in vehicles. The sponsors contend that the *proliferation of false compartments in the drug trade is due to an increase in the number of specialized auto shops which manufacture and install such compartments*…. Persons who manufacture or use secret compartments can only be prosecuted for an underlying drug offense and not for the use of the compartment itself.' (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1760 (1993–1994 Reg. Sess.) as introduced, Mar. 4, 1993, p. 2, italics added.) The Senate Judiciary Committee's analysis included the bill sponsors' assertion that 'under current law, an auto shop *which builds and installs false compartments* for the transportation of controlled substances may openly admit their purpose to law enforcement officers and feel secure

---

[6]Certainly on the facts elicited at trial, it could be argued that Garcia would be using the compartment on a continuing basis.

11.

in the fact that they have violated no law and can not be prosecuted unless they actually possess an illegal controlled substance' and the sponsors contend that the bill 'would provide a necessary tool for law enforcement efforts to combat increasing use of false compartments in the drug trade.' (*Ibid.*, italics added.) This legislative history reveals the legislative intent to punish the individual who manufactures false compartments or who uses false compartments that are fabricated by someone other than the manufacturer of the original vehicle equipment." (*People v. Arias, supra,* 45 Cal.4th at pp. 182-183.)

Thus, on the facts here, we do not believe the intent of Health and Safety Code section 11366.8 is frustrated by the application of section 654 to defendant's case. Here the evidence established defendant did not own the vehicle. No evidence showed defendant regularly used the vehicle. No evidence showed defendant was responsible for having the false compartment installed or manufactured. No evidence established defendant was an individual routinely involved in the drug trade and involved in enterprises such as those operated by Diaz and Garcia. Instead, the evidence established defendant was nothing more than a one-time courier. Punishing him for the use of a false compartment, in addition to the transportation of methamphetamine, is not proper because that use amounted to no more than a course of conduct with a single intent and objective.

Further, the trial court's own language at sentencing also supports our conclusion that the use of a false compartment is part and parcel to the transportation of the controlled substance that the compartment was designed to conceal. That is, the compartment was "[b]asically used for the transportation and the concealment of drugs and/or money." Concealment is not necessary without transportation, for there is nothing to conceal in the absence of transportation. The intent and objective behind concealment is to effect the transportation. The fact the compartment was sophisticated does not change our analysis in this case.

Moreover, a review of the jury instruction pertaining to the use of a false compartment supports our finding that transportation *and* its concealment arise from a single intent:

"The defendant is charged in Count 3 with possessing/using/ controlling/a false compartment with *the intent to store/conceal/transport a controlled substance* in a vehicle in violation of Health and Safety Code section 11366.8.

"To prove the defendant is guilty of this crime, the People must prove that:

"1. The defendant possessed/used/controlled a false compartment with *the intent to store/conceal/transport* a controlled substance in the false compartment in a vehicle;

"A false compartment is any box, container, space, or enclosure intended or designed to conceal/hide otherwise prevent discovery of any controlled substance within or attached to a vehicle." (CALCRIM No. 2441, italics added.)

The intent referenced therein is plainly singular.

We are satisfied our conclusion in this case comports with the purpose of section 654; that is, to ensure the defendant's punishment is commensurate with the defendant's criminal culpability. (*People v. Hall*, *supra*, 83 Cal.App.4th at p. 1088.)

In sum, while there is a sufficient basis for the jury's verdicts—convicting defendant of the use of a false compartment and, separately, for the transportation of methamphetamine—there is no basis to distinguish the use of a false compartment from defendant's conviction for *transporting* those controlled substances for purposes of punishment. Defendant's use of the hidden compartment in Garcia's Ford Explorer had only one intent and objective: to enable him to transport the drugs from Bakersfield to Madera on a single occasion. Therefore, the trial court did not have a sufficient basis upon which to impose a consecutive 16-month sentence in count 3. The sentence must be stayed.

## II.     The Abstract of Judgment

The abstract of judgment filed November 15, 2012, erroneously indicates that defendant was convicted by way of plea. Defendant was convicted following a nine-day jury trial. The abstract of judgment must be corrected accordingly. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.)

13.

Additionally, the abstract fails to indicate defendant was sentenced pursuant to sections 667, subdivisions (b) through (i), and 1170.12, for a 2004 prior strike conviction (robbery). On this basis, too, the abstract of judgment should be corrected. (*People v. Mitchell*, *supra*, 26 Cal.4th at p. 185.)

## DISPOSITION

The judgment is modified to reflect imposition of the 16-month sentence on count 3 is stayed pursuant to section 654. The trial court is directed to amend the abstract of judgment accordingly, resulting in a total sentence of 11 years. Additionally, the abstract of judgment should be corrected to reflect that defendant was tried by a jury, and that he was sentenced in accordance with his having suffered a strike prior. As so modified, the judgment is affirmed. The trial court is directed to cause to be prepared an amended abstract of judgment reflecting said modifications and to transmit certified copies thereof to the appropriate authorities.